## THE GALVESTON OIL CO. v. JOHN MALIN.

### (Case No. 1774.)

1. CHARGE OF COURT.— See opinion for a charge of the court in regard to the manner in which a jury should proceed in estimating damages, which, while not so clear and satisfactory as it should be, yet furnished the jury a rule for their guidance which cannot be said to be inapplicable to the case,— for facts of which see statement.

2. PRACTICE — DAMAGES — CHARGE.— The better practice in suits for damages for personal injuries is for a party, who is disappointed with the terms in which the district judge has stated to the jury the rule to be followed in estimating damages, to at once ask him to give to the jury, in addition, a carefully drawn instruction embracing the rule to be followed in estimating the damages, as he believes it to be.

3. CHARGE OF COURT.— See opinion for a charge asked and refused which was directed to the question of contributory negligence on the part of the employee of a company, suing it for damages on account of personal injuries, which, though correct, yet the action of the court in refusing it afforded no ground for reversal, the substance of it having been given in the main charge to the jury.

4. DAMAGES.— See statement of case for facts as to the character of personal injuries, for which $4,000 damages were awarded, and which were held not so excessive as to require a reversal.

APPEAL from Galveston. Tried below before the Hon. W. H. Stewart.

Suit by John Malin against the Galveston Oil Company to recover damages, alleged to have resulted to him by reason of injuries received in the performance of his duties as its employee in putting a leather belt on a pulley used in operating a part of the machinery of its mill. The injuries were received about February 26, 1883, and

were charged to have been due to defective machinery and the negligence of the company. Defendant answered by general demurrer, general denial, and special pleas, charging Malin with recklessness, negligence and disobedience of orders, and that the injuries complained of were due alone to his own fault, and not to defective machinery or the company's negligence. Verdict for Malin for $4,000 and judgment thereon.

Appellee testified as follows:

"The day I was hurt I was up stairs at my carpenter work, when I was sent for to put on the belt; and I put my work down and went down stairs to put on the belt; and while I was engaged in putting on the belt an open hook caught my sleeve and jerked me over the pulley; tore all the flesh off of my forefinger and thumb, etc. Don't know how or when the hooks parted. It was not my duty to inspect the belt. It was the duty of the superintendent and engineer. I was attempting to put the belt on in the same manner I had always done, when I was injured. The beam to which the shaft and pulley are attached is about twelve feet high. There was no platform or anything to stand on while adjusting the belt to pulley. I had to get a ladder, place it against the beam, climb up, stand with one foot on ladder and my knee on the beam, hold on to an upright pillar with one hand, stoop over and catch belt with the other, pull it up on pulley with my hand and press it on with my arm. When the belt is on the edge of the pulley it begins to move, and it takes a number of revolutions to complete the adjustment. The machinery was going at its full velocity when I was hurt; they did not slow up for me to put on the belt — they never slowed up for that purpose. The belt would be slipped off, some days as many as six or seven times a day. The belt was leather, about a foot wide and forty feet long, counting both ways — that is, twenty feet from point to point. Belt was fastened with metal hooks; there were as many as two fastenings, but can't say how many more. I don't know how the hooks parted, or when they parted. Came down immediately upon being notified. No one told me to put on the belt before the machinery was in motion. The superintendent did not warn me not to seize the belt near the hooks when putting it on pulley. No instructions were given me by defendant or any of its officers, on the occasion of my injury, to put the belt on before machinery was in full motion. It was the custom to put the belt on when machinery was in full motion when directed to do so. Anybody took belt off. Don't know who took it off night before accident. I did not."

Mannetosky and another testified: "Appellee acted in his usual

way in putting on the belt; but for the open hook catching him the injury would not have occurred. The belt parted (Counsel — not the hooks), and Malin fell to the floor senseless. He acted in his usual way in putting on the belt; they never slowed up the machinery to put on the belt. It was going with full speed."

Superintendent Hulme testified: "It was my duty to superintend the mill and its appliances. The belt was put on at no particular time. It was the plaintiff's contract and duty to put it on whenever directed. He performed the service for sixteen months continuously before the injury occurred. In that period no accident happened. He was a skilled hand and did his duty well. It was his duty to put on the belt whether the machinery was going fast or slow; and he often performed that service when it was going at its best velocity."

Hulme, cross-examined by appellee: "All the belts in the mill are connected by metal hooks, except belt on main wheel. There are no hooks made for that character of belt. It is fastened with twang leather. Belts of all sizes are fastened with twang leather, and some prefer them to metal hooks; but I do not. If the belt had been fastened with twang leather, of course there would have been no parted hooks to have caught him. Loose pulleys are used when belts are to be shifted often, and are safe. There is no danger in handling a loose belt. By pulling or pushing the lever of a loose pulley the belt is shifted on or off the fixed pulley. Loose pulleys are only used when the belt has to be shifted many times a day — every few minutes. They are used about very delicate machinery. The accident could not have happened if the pulley had had a loose pulley. The belt was put on by plaintiff some days half a dozen times. The machinery is never slowed up for that purpose. Loose pulleys are not used in mills like defendant's. It was my duty to superintend mill and appliances."

Another witness for defendant testified that plaintiff put on the belt whenever requested, and that they never slowed up for him to put it on.

There was a conflict of testimony as to whether plaintiff was ordered to put on the belt before the machinery was in full motion.

The reference. in the opinion to those portions of the main charge which obviated the necessity of giving the charge refused renders it unnecessary to give the main charge in full.

*Hume & Shepard,* for appellant, cited on the refusal to give charge asked: G., H. & S. A. R. Co. *v.* Delahunty, 53 Tex., 211–12; Tex. M. R. Co. *v.* Whitmore, 58 Tex., 289; Wabash R. Co. *v.*

McDaniels, 107 U. S., 458, 463; D. C. Rules, 60 *a;* Wood's Master and Serv., secs. 418, 419, last sentence on p. 800, 332; Shearman & Redf. on Negligence, sec. 90; Hoffman *v.* Chicago R. Co. (Mo.), 17 Cent. L. Jour., No. 5, August 2, 1883, 97, 98; Wright *v.* N. Y. C. R. Co., 25 N. Y., 566; R. R. Co. *v.* Troesch, 68 Ill., 547–8, 551–3; Kunz *v.* Stuart, 1 Daly (N. Y.), 436; Wonder *v.* Balt. R. Co., 32 Md., 416–20; Beaulieu *v.* Portland Co., 48 Me., 295–6; McMillan *v.* Saratoga R. Co., 20 Barb., 449.

On their proposition that appellee could not recover unless it was shown that appellant was negligent in the selection of machinery and appliances, whereby the injury occurred, they cited: G., H. & S. A. R. Co. *v.* Lempe, 1 Tex. Law Review, 117; Davis *v.* D. & M. R. Co., per Cooley, J., approving Mad River R. Co. *v.* Barber, 5 Ohio (N. S.), 564; 20 Mich., 125–6; Loonam *v.* Brockway, point stated in syllabus; 3 Rob. (N. Y.), 74; O'Connell *v.* Baltimore & Ohio R. R. Co., 20 Md., 220–2.

*Frank M. Spencer* and *John T. Harcourt,* for appellee.

WEST, ASSOCIATE JUSTICE.— The merits of this case have been very carefully and fully presented to us both in oral argument and printed brief.

The first assignment of error to which our attention has been called relates to certain supposed defects in the main charge of the court, in its instructions to the jury, as to the manner in which they should proceed in estimating the damages (if any) sustained by the appellant. The paragraph to which objection is specially made is as follows: "In case you believe, from the evidence, under the charge of the court, that the plaintiff is entitled to recover damages, in estimating such damages you will estimate the damage by the loss which he has sustained. And in estimating the amount of damage you will take into consideration the plaintiff's lessened ability, if any, to earn money, and the probable duration of such disability, including also his pain and suffering endured by the wounds."

This charge on this point is not quite as clear and satisfactory as it is desirable it should be, still it furnishes the jury a rule for their guidance in this matter that cannot be said to be inapplicable to the case. It might have been better for the court to have made the charge somewhat fuller and clearer on this subject, but it fairly enough furnished a reasonably safe guide to the jury in the case under consideration.

In the last edition (1880) of Mr. Sedgwick's valuable work on the

Measure of Damages, in cases of this character, it is said (2d vol., pp. 543, 544) in the text, that except in aggravated cases the relief must be confined to compensation. In determining what is a fair and just compensation, it is said in the notes of the editor that the damages should, as far as a money standard can be applied to such case, be such as to compensate the injured party for such loss of time, medical bills, and like expenses, physical pain and also such mental distress as are fairly and reasonably the plain consequences to him of the injury.

No additional instruction was asked by appellant on this point. In cases of this character, where it is not always easy for the court to furnish, in the hurry of the trial, to the jury a perfect and correct rule as to how they shall estimate the damages, or in fact any rule that will not, to some extent, be subject to criticism, the safer and better practice is for the party who is disappointed with the terms in which the district judge has stated to the jury the rule to be followed in estimating the amount of damages sustained, to at once ask him to give the jury, in addition, a carefully drawn instruction, embracing the rule to be followed in estimating the damages, as he believes it to be. See, also, the cases cited in 1 Sutherland on Damages (published in 1882), pp. 158, 159 (notes), as to elements of damage in cases of this character.

In his second assignment of error the appellant brings in review the action of the district court in refusing to give the jury the fourth charge asked by the appellant. This instruction was intended to call the attention of the court specially to the alleged failure of the appellee, on the day when the injury was received, to obey the orders of his superior, as to the time when the belt was to be placed by him on the pulley. The charge in question, which the district judge declined to give, was as follows:

"If you believe, from the evidence, that there was greater risk of danger in putting the belt on the pulley when the machinery was being propelled by the full force of the engine than there was when the engine had not attained its power and the machinery was just beginning to move, or was running slowly; and that plaintiff, on the particular occasion named in his petition, was instructed by defendant, or its superintendent, or its engineer, to put the belt on the pulley when the machinery was first put in motion, or was moving slowly, and that plaintiff did not obey said instruction, but delayed putting on the belt until the engine was exerting its full force upon the machinery, the plaintiff is not entitled to recover, and you will find for the defendant."

This instruction was in the main a correct enough presentation to the jury of one of the issues in the case, and one which it was proper for them to take into careful consideration, in connection with the question of negligence charged upon the appellee.

The judge, we are inclined to believe, from a careful examination of the case, refused to give the instruction asked because he was of opinion that the substance of it had been already embraced in his main charge to the jury. We think that the court did not commit any material error in coming to such a conclusion, and therefore declining to give the instruction under consideration. The court, in its charge to the jury, in one paragraph, stated to them that if they believed from the evidence that the appellee's injuries were the result of his disobedience of the orders of his superior in the *manner* of putting the belt on the pulley in question, then they should find for appellant. It is true that this portion of the charge did not in so many words call the attention of the jury to the issue as to appellee's disobedience of orders, as to the *time* when he was to place the belt on the pulley. It however called the attention of the jury to the subject of appellee's disobedience of orders, and stated what the consequences to appellee would be if they found he had been guilty of disobedience of orders as to the manner of putting the belt on the pulley.

In another paragraph of the charge, however, the court again calls the attention of the jury to the consequences to appellee if he has been guilty of disobedience of the orders of the superintendent. On this subject the court says, in substance, that it is the duty of the employee to obey the orders of the superintendent in operating the machinery in question.

Again, in another portion of the charge, the court, on this subject, instructs the jury that where an employee is shown to have received injuries in the management of machinery, resulting from his disobedience of the orders of the superintendent, he cannot recover. This part of the charge plainly tells the jury that if they believe the appellee, at the time in question, disobeyed any order whatever of the appellant, given through its proper officer, and was injured as a consequence of such disobedience, he cannot recover.

Taking all these matters into consideration, we are not prepared to say that the refusal of the court to give the instruction asked is a sufficient reason for the reversal of the case.

The question of fact as to whether the appellee did or did not receive any such order, and whether he did or did not obey it, and the consequences to him of such disobedience, were, on the whole,

fairly enough submitted for the consideration of the jury under the charge of the court.

It is also strongly urged, as a ground of reversal, that the verdict was excessive. This was a matter that it was the special province of the jury to pass upon. The charge of the court submitted that matter fairly enough to them, and we do not feel authorized in disturbing the verdict on this ground.

There are other errors assigned. These have also been carefully looked into, but it is not deemed necessary to consider them further. We think there was no serious error committed in the trial of the case in the district court. At least nothing serious enough to require a reversal of the case.

The judgment is affirmed.

AFFIRMED.

[Opinion delivered February 27, 1884.]